UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENCYCLOPAEDIA BRITANNICA, INC.,<br>331 North LaSalle Street<br>Chicago, IL 60654<br><br>            Plaintiff,<br><br>    v.<br><br>DICKSTEIN SHAPIRO, LLP,<br>1825 Eye St NW<br>Washington, DC 20006<br><br>            Defendant. | Civil Action No. _____ |

## COMPLAINT

**ENCYCLOPAEDIA BRITANNICA, INC.** for its complaint against **DICKSTEIN SHAPIRO, LLP** alleges as follows:

### Preliminary Statement

Dickstein Shapiro, LLP (Dickstein) has represented Encyclopaedia Britannica, Inc. (EB) in various intellectual property matters for more than two decades. EB initially retained Dickstein based in material part on Dickstein's assertion of experience and expertise in matters particularly with respect to patent prosecution. As it turns out, EB's reliance on Dickstein's asserted expertise was misplaced.

More particularly, Dickstein's manifest negligence has resulted in the loss of EB's valuable patent rights. As hereinafter alleged, the errors and omissions that led to this valuable property loss and Dickstein's response to the admittedly negligent performance at issue are quintessential examples of hornbook malpractice. When confronted with the potential adverse consequences of the patent prosecution errors, Dickstein further

1

breached the fiduciary duties owed to EB and perpetuated additional wrongful and negligent conduct.

1. EB is a corporation organized under the laws of the State of Delaware, with its principal place of business in Chicago, Illinois.

2. Dickstein is a limited liability partnership engaged in the practice of law. Dickstein maintains a principal place of business in Washington, D.C. and within this District.

3. Jurisdiction obtains under 28 U.S.C. §1338. Venue is proper in this District pursuant to Title 28 since the defendant is found here.

**Dickstein's Incompetence Leads to the Loss of EB's Valuable Patent Rights**

4. In the late 1980's, Dickstein was retained by EB to file and prosecute a number of patent applications relating to ground breaking inventions in the field of multi-media search systems.

5. Following Dickstein's extensive, time-consuming and costly patent prosecution efforts in the United States Patent Office (PTO), EB was awarded a number of presumptively valid and enormously valuable patents.

6. Two patents that issued as a result of these Dickstein efforts (later to be determined improvident) are United States Patent Nos. 7, 051, 018 and 7,082, 437. When these patents issued in 2006, EB had no knowledge that because of Dickstein's negligence, the '018 and '437 patents would be vulnerable to a claim of invalidity.

7. After a detailed analysis of potential infringements and in reliance on the presumptively competent efforts of Dickstein, EB brought suit against a number of defendants, seeking millions of dollars in damages as well as injunctive relief.

8. More particularly and as of October of 2007, Civil Action Nos. 1:06 CV 578 LY and 1:07 CV 787LY were pending in the United States District Court for the Western District of Texas.

9. In the Texas litigation, EB asserted that the '018 and '437 patents were infringed by the products of certain major national and international companies. Among other remedies, EB sought injunctive relief, compensatory and punitive damages, as well as an award of attorney fees. The projected damages sought to be recovered exceeded $250 million.

10. On October 5, 2007, the defendants in the 787LY case brought a motion for summary judgment. The essence of that motion (attached **Exhibit A**) was that Dickstein's incompetent prosecution efforts exposed the '018 and '437 patents to an invalidity defense based on EB's own "prior art."

11. As noted below and following extensive and expensive briefing and other proceedings in the District Court, the Hon. Lee Yeakel entered a Memorandum Opinion and Order on August 3, 2009 (attached **Exhibit B)** in which the Court ordered and declared that EB's '018 and '437 patents were invalid. That ruling is now on appeal.

### Prior to Judge Yeakel's Ruling, Dickstein's Negligence is Aggravated by Further Breaches of Fiduciary Duty

12. When Dickstein learned of the Summary Judgment motion filed before Judge Yeakel in October of 2007, Dickstein did two damaging things. First, Dickstein pursued a self-serving a course of action in the Patent Office (PTO) that would arguably seek to remedy Dickstein's earlier errors and incompetence. Second, and without any notice to EB as mandated by Dickstein's fiduciary status, Dickstein alerted Dickstein's insurer to the likelihood of a malpractice claim by EB.

13. Thus, the first course of action was pursued by Dickstein in the PTO without Dickstein advising EB that Dickstein was in a conflicted posture in derogation of Rule 1.7 of the Rules of Professional Conduct. Because of Dickstein's self-interested strategy before the PTO, EB's position in the Summary judgment proceedings before Judge Yeakel was further weakened. See (attached **Exhibit C**).

14. Among the aggravating miscues of Dickstein before the PTO in attempting to rectify the earlier Dickstein prosecution errors was the submission to the PTO of an affidavit of Dickstein partner Jon D. Grossman (attached **Exhibit D**). Mr. Grossman was the Dickstein partner responsible for the fatal prosecution errors that led to the invalidity of the '437 and '018 patents.

15. The Grossman affidavit, which essentially confesses negligence on the part of EB's counsel Dickstein, doomed any possibility of the PTO granting relief that would have salvaged the '018 and '437 patents. Indeed, the Grossman affidavit acknowledges that Grossman/Dickstein fraudulently suppressed and concealed the incompetent prosecution of the relevant EB patent applications from EB and demonstrates that Dickstein is estopped from challenging EB's pursuit of damages resulting from this conduct.

16. Throughout the prosecution of the relevant patent applications and the subsequent assertion of the resulting '437 and '018 patents, EB reasonably and justifiably relied on Dickstein to fulfill its fiduciary duties and mandatory obligation to comply with Rules 1.1, 1.2, 1.3, 1.4, 1.7 and 1.16 of the Rules of Professional Conduct, among others, and the corresponding mandates of the Restatement of the Law Governing Lawyers.

17. Dickstein's continuing acts of negligence resulting from, *inter alia*, its conflicted posture and breaches of fiduciary duty ultimately led to the invalidation of the extremely valuable '018 and '437 patents; accordingly, Dickstein has directly and proximately caused EB many millions of dollars in damages.

### Count I: Professional Negligence

18. EB re-alleges and adopts by reference the allegations contained in the foregoing paragraphs 1 through 17.

19. The elements of professional negligence include: (a) an attorney-client relationship; (b) duties arising from that relationship; (c) breach of those duties and damages proximately caused by such breaches.

20. EB's allegations define and satisfy each of these elements. First, an attorney-client relationship existed between EB and Dickstein. Second, as a consequence of that attorney-client relationship, Dickstein undertook duties of competence and care on behalf and for the benefit of EB. Third, Dickstein admittedly breached these duties by failing to protect EB's valuable intellectual property assets, which Dickstein pledged to do. Dickstein further breached the appropriate standard of care and Dickstein's fiduciary obligations to EB by concealing the Grossman prosecution failures and Dickstein's conflicted status. Finally, Dickstein's conduct has proximately caused EB many millions in damage, not only in the context of the failed Texas litigation but also in terms of millions of dollars to be realized by EB from royalties and licensing fees, which would otherwise be recoverable from infringers of the '018 and '437 and related patents who were not defendants in the Texas litigation.

### Count II – Breach of Fiduciary Duty

21. EB re-alleges and adopts by reference the allegations contained in the foregoing paragraphs 1 through 17.

22. At all relevant times, Dickstein owed EB fiduciary duties.

23. Dickstein willfully breached those duties by failing to advise EB of the conflicts that existed once Dickstein learned of the summary judgment proceedings, by notifying the Dickstein carrier without notice to EB; and by attempting to self-servingly rectify Dickstein's earlier errors, omissions and negligence, all without giving EB the notice and guidance mandated by Rule 1.7 of the Rules of Professional Conduct.

24. As a direct and proximate result of these fiduciary breaches, EB has suffered damages as set forth above.

WHEREFORE, EB requests a judgment in EB's favor in an amount exceeding $250 million and such further relief as may be just and equitable. EB also demands a trial by jury.

Respectfully submitted,

By: /s/ Joseph E. diGenova
Joseph E. diGenova
DC Bar # 73320
Victoria Toensing
DC Bar # 304980
diGENOVA & TOENSING, LLP
1776 K Street, N.W., Suite 737
Washington, D.C. 20006
(202) 289-7701
(202) 289-7706 (fax)
Counsel for Plaintiff

By: /s/ Robert P. Cummins
Robert P. Cummins
*Of Counsel*
THE CUMMINS LAW FIRM, PC
77 Wacker Drive, Suite 4800
Chicago, IL 60601
(312) 578-0500
Of Counsel for Plantiff