UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ENCYCLOPAEDIA BRITANNICA, INC., <br><br> Plaintiff, <br><br> v. <br><br> DICKSTEIN SHAPIRO, LLP, <br><br> Defendant. | Civil Action No. 10-0454 (JDB) |

## MEMORANDUM OPINION

In this legal malpractice action plaintiff Encyclopaedia Britannica, Inc. seeks to invoke judicial estoppel against its former law firm, defendant Dickstein Shapiro, LLP, based on statements Dickstein made as Britannica's attorney. The parties filed motions and cross-motions for partial summary judgment as to the judicial estoppel issue. Britannica also filed a motion for sanctions, arguing that Dickstein engaged in evasive discovery conduct. On November 15, 2012, the Court held a motions hearing. For the reasons explained below, the Court will deny Britannica's motion for partial summary judgment, deny its motion for sanctions, and grant Dickstein's cross-motion for partial summary judgment.

## BACKGROUND

The background for this dispute is recounted more fully in this Court's prior opinion. See Encyclopaedia Britannica, Inc. v. Dickstein Shapiro, LLP, No. 10-454 (D.D.C. Feb. 2, 2012) [Docket Entry 36]. As relevant here, Dickstein represented Britannica in the prosecution of several patents relating to a multimedia database search system. While prosecuting the patent applications in 2005, Dickstein partner Jon Grossman filed two petitions for expedited treatment with the United States Patent and Trademark Office ("PTO") on Britannica's behalf. The

1

petitions for expedited treatment, called Petitions to Make Special, were based on actual infringement. To obtain expedited treatment on that basis, an applicant must file a petition "accompanied by a statement by the applicant, assignee, or an attorney/agent registered to practice before the Office alleging," among other things, "[t]hat a rigid comparison of the alleged infringing device, product, or method with the claims of the application has been made, and that, in his or her opinion, some of the claims are unquestionably infringed." Manual of Patent Examining Procedure § 708.02, Section II (8th ed. rev. 2 2004) ("Manual"). In 2005, Grossman filed such a statement for two of Encyclopaedia Britannica's applications. Tracking the Manual's language, Grossman stated:

> Applicants' attorney is aware of at least one infringing product on the market that infringes one or more claims of this application. Applicants' attorney has made a rigid comparison of the alleged infringing device with the claims of the application. <u>In the opinion of Applicants' attorney, some of the claims are unquestionably infringed.</u> While Applicants have not conducted a recent search of the prior art in connection with this petition, Applicants have a good knowledge of the pertinent prior art based upon years of prosecution of the original parent application, its subsequent reexamination, and the follow-on continuation patent applications that are related to this patent application.

Ex. 33 to Def.'s Cross-Mot. for Partial Summ. J. [Docket Entry 57-13] (June 13, 2005) ("Ex. 33") (emphasis added); Ex. 36 to Def.'s Cross-Mot. for Partial Summ. J. [Docket Entry 57-13] (June 13, 2005) ("Ex. 36") (emphasis added). Britannica's litigation counsel, Baker Botts, was substantially involved in the decisions surrounding the Petition to Make Special, including providing Grossman with information he needed to form an opinion about infringement. Ultimately, however, Grossman himself signed the statement.

The PTO granted at least one of the two applications.[1] In its decision, the PTO explained that "[a] grantable petition . . . must be accompanied by . . . statements by an attorney/agent registered to practice before the Patent and Trademark Office" that, among other things, "in his

---

[1] The parties dispute whether the second application was granted, but that is not significant to the analysis here.

or her opinion, some of the claims are unquestionably infringed." Ex. 34 to Def.'s Cross-Mot. for Partial Summ. J. [Docket Entry 57-13] (Aug. 23, 2005) ("Ex. 34"). The decision then stated: "Applicant's submission meets all the criteria set out above. Accordingly, the Petition is GRANTED." Id.

After the patents issued, Britannica filed suit in the Western District of Texas seeking damages for their infringement. Britannica's patents claimed an earlier filing date based on a priority chain to a "parent" patent. Due to a technical problem in the priority chain—one application in the chain failed to reference an earlier application in the chain—that court held that Britannica's patents could not get the benefit of the earlier filing date. Because Britannica had published a substantially similar foreign patent application more than a year before the actual filing date, see 35 U.S.C. § 102(b), the court held the patents were invalid. See Encyclopaedia Britannica, Inc. v. Alpine Elecs. of Am., Inc., 643 F. Supp. 2d 874, 876 (W.D. Tex. 2009), aff'd, 609 F.3d 1345 (Fed. Cir. 2010).

After the Western District of Texas court's ruling, Britannica filed this suit against Dickstein alleging malpractice and breach of fiduciary duty. This Court dismissed the fiduciary duty claim. See Encyclopaedia Britannica, Inc., No. 10-454 [Docket Entry 36]. To prevail on its legal malpractice claim, Britannica must show that Dickstein was negligent and that the negligence caused its injury. Britannica now argues that Dickstein should be judicially estopped from denying that the invalid patents were infringed (a key component of proving that the alleged malpractice caused Britannica's injury) based on Grossman's statements to the PTO. At Britannica's suggestion, the Court allowed discovery limited to this issue and set a briefing schedule for a partial motion for summary judgment as to whether Britannica is entitled to

invoke judicial estoppel. See May 30, 2012 Scheduling Order [Docket Entry 46]. That motion and cross-motion are now before the Court.

## STANDARD OF REVIEW

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The moving party may successfully support its motion by identifying those portions of "the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of motion only), admissions, interrogatory answers, or other materials," which it believes demonstrate the absence of a genuine issue of material fact. Fed. R. Civ. P. 56(c)(1); see also Celotex, 477 U.S. at 323.

In determining whether there exists a genuine dispute of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position. Id. at 252. Moreover, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (citations omitted). Summary judgment, then, is appropriate if the non-movant fails to offer "evidence on which the jury could reasonably find for the [non-movant]." Id. at 252.

## ANALYSIS

I.  **Application of Judicial Estoppel**

To prevail in its legal malpractice action under D.C. law, Britannica ultimately has to show, among other things, that Dickstein's actions caused its injury, i.e., that, had it not been for Dickstein's purported malpractice, Britannica would have prevailed in its Western District of Texas infringement suit. This is the so-called "case within a case" or "trial within a trial" showing required for malpractice suits under D.C. law. See Breezevale Ltd. v. Dickinson, 879 A.2d 957, 960 (D.C. 2005); see also 4 Ronald E. Mallen & Jeffrey M. Smith, Legal Malpractice § 37:14 (2012) ("The accepted approach in establishing whether the lawyer's act or omission caused an injury is by a trial-within-a-trial . . . .").

Britannica contends that, because a Dickstein partner stated that "some of the claims are unquestionably infringed" in filing the Petition to Make Special, see Ex. 33; Ex. 36, and the PTO accepted that statement, Dickstein Shapiro should be estopped from denying that any of the products Britannica accused of infringement in the Western District of Texas litigation actually infringed the issued patents. In other words, Britannica maintains that given its prior statements, Dickstein is largely estopped from denying that its conduct caused Britannica's injury.

a.  **Legal Background**

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." Pegram v. Herdrich, 530 U.S. 211, 227 n.8 (2000). "Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (alteration and internal quotation marks omitted).

Although "'[t]he circumstances under which judicial estoppel may appropriately be invoked are probably not reducible to any general formulation of principle,'" Moses v. Howard Univ. Hosp., 606 F.3d 789, 798 (D.C. Cir. 2010) (alteration in original) (quoting Maine, 532 U.S. at 750), courts must answer "at least three questions" in deciding whether judicial estoppel applies:

> (1) Is a party's later position clearly inconsistent with its earlier position? (2) Has the party succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled? (3) Will the party seeking to assert an inconsistent position derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped?

Id.

"Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion." Maine, 532 U.S. at 750 (citation and internal quotation marks omitted). "Application of the doctrine of judicial estoppel should be guided by a sense of fairness, with the facts of the particular dispute in mind." 18 Moore's Federal Practice § 134.31 (3d ed. 2012).

### b. Judicial Estoppel Cannot Apply to Statements Made by an Attorney for the Now-Opposing Party

Rather than a party in the PTO proceedings, Dickstein was counsel to Britannica itself. Hence, Britannica's judicial estoppel argument fails because judicial estoppel cannot apply to statements made by an entity that was not a party in the prior proceedings where the statements were made.

The Supreme Court, the D.C. Circuit, and treatises all formulate the judicial estoppel test in terms of parties. See Maine, 532 U.S. at 749 ("'The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that

party in a previous proceeding[.]'" (quoting 18 Moore's Federal Practice § 134.30 (3d ed. 2000))); id. ("'absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory'" (quoting 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, at 782 (1981))); Comcast Corp. v. FCC, 600 F.3d 642, 647 (D.C. Cir. 2010) ("[C]ourts may invoke judicial estoppel where a party assumes a certain position in a legal proceeding, succeeds in maintaining that position, and then, simply because his interests have changed, assumes a contrary position." (omissions, alterations, and internal quotation marks omitted)); Moses, 606 F.3d at 798 ("Has the party succeeded in persuading a court to accept that party's earlier position . . . ?") (all emphasis added). To be sure, none of these cases considered statements a party made earlier in a non-party capacity, so this party-centered phrasing is not necessarily determinative. But the logic of judicial estoppel—that a party should not be changing its position between proceedings—does not apply to statements made before one was a party at all.

      Moreover, even if there is no absolute rule that the party being estopped must have been a party at the time it made the statements, it is certainly improper to estop an entity based on statements it made in its prior capacity as the now-opposing party's lawyer or representative. See, e.g., Bowers v. Montague, 14 F.3d 593, 1993 WL 513845, at *3 n.5 (4th Cir. 1993) (per curiam) (unpublished table decision) ("Even if the court were to entertain Bowers' argument, judicial estoppel would not bar Montague from taking a contrary position in this appeal. Montague was not a party in the state court proceeding but acted as advocate."); see also Shapiro, Lifschitz & Schram, P.C. v. Hazard, 90 F. Supp. 2d 15, 21 (D.D.C. 2000) (rejecting application of estoppel where a law firm sued former clients for unpaid attorney fees "because plaintiff was [defendant's] attorney and was advocating that position on [defendant's] behalf" at

7

the time of inconsistent statement); Loube v. Loube, 74 Cal. Rptr. 2d 906, 910 (Ct. App. 1998) ("At the most, the doctrine of judicial estoppel precludes a party from taking one position in one action and an inconsistent position in another action. Respondents were not a party to the earlier proceedings. Appellants have cited [to us] no authority standing for the proposition that the position taken by attorneys on behalf of their clients somehow becomes binding on the attorneys when later sued by the same clients. Indeed, given the nature of litigation and of the duty owed by an attorney to his or her client we can find no support in law or logic for such a proposition." (citation omitted)). The one case Britannica has belatedly found to the contrary, a 1973 decision from an intermediate state court, holds without analysis that judicial estoppel applies. See Kohler v. Woollen, Brown & Hawkins, 304 N.E.2d 677, 679 (Ill. App. Ct. 1973). That case, decided long before the Supreme Court's key judicial estoppel decision, is unpersuasive, and the relative weakness of this single decision against the weight of cases emphatically holding to the contrary is telling.

The logic of judicial estoppel unravels in the malpractice context. An entity acting as a lawyer to a client is fundamentally differently situated than an entity acting in its own interest in subsequent malpractice litigation. The positions a law firm takes in those two contexts are necessarily in significant tension—as a lawyer representing a client, a firm defends the strengths of the client's position while in malpractice litigation it seeks to demonstrate the opposite, i.e., that the client would have lost. A lawyer cannot be faulted for this inherent inconsistency, and where a party cannot be faulted, applying judicial estoppel is often inappropriate. Cf. Reed Elsevier, Inc. v. Muchnick, 130 S. Ct. 1237, 1249 (2010) (rejecting application of judicial estoppel where parties changed position as to whether a statutory provision was jurisdictional, because, among other reasons, "the parties made their prior statements when negotiating or

defending the settlement agreement" and the Court "do[es] not fault the parties' lawyers for invoking in the negotiations binding Circuit precedent that supported their clients' positions"); Maine, 532 U.S. at 750 ("Because the rule is intended to prevent improper use of judicial machinery, judicial estoppel is an equitable doctrine invoked by a court at its discretion[.]" (citation and internal quotation marks omitted)). Even worse, applying judicial estoppel against a law firm in malpractice litigation for statements it made as plaintiff's lawyer could chill full and vigorous representation, forcing attorneys to make tradeoffs between a client's interests and protecting themselves in case of a future malpractice suit.[2]

Moreover, applying judicial estoppel would be inconsistent with principles of malpractice litigation—that the plaintiff must prove the strength of his case and that recovery is appropriate only if the plaintiff would have actually prevailed. Judicial estoppel would vitiate the plaintiff's burden. As the Third Circuit explained in rejecting the application of estoppel in a legal malpractice action: "Naturally, a plaintiff's attorney in filing an action takes the position that the action is justified. If the attorney through some error precludes the case from being litigated on the merits, then the concept of a trial within a trial is not consistent with estopping the attorney from contending that if he had not made an error in any event he could not have been successful." Seibert v. Nusbaum, Stein, Goldstein, Bronstein & Compeau, P.A., 167 F.3d 166, 170 (3d Cir. 1999). Allowing Grossman's prior statement that at least one claim was infringed to

---

[2] This problem would remain if the Court adopted, as Britannica urges, a personal knowledge line, allowing judicial estoppel for statements based on an attorney's personal knowledge but not for the attorney's arguments in a brief. Applying judicial estoppel to personal knowledge-based statements would deter lawyers from making representations, like the ones Grossman made here, that might be highly beneficial to the client. If the attorney can make these representations consistent with his ethical duties, he should not be deterred because doing so would uniquely expose him to possible malpractice liability.

be conclusive on that question would be inconsistent with the concept of a trial within a trial to determine whether that belief was actually correct.

As Britannica correctly points out, Grossman's statement is more personal than a legal statement in a brief. It is based on his own analysis and reflects his own opinion. And the statement is stronger than most attorney representations because Grossman stated that the claim was "unquestionably" infringed. Ex. 33; Ex. 36. Still, regardless of the statement's strength, opening the door to judicial estoppel for non-party statements made in the former client's interest is inappropriate. The statement's specificity or emphatic nature might well mean that (assuming it is admitted into evidence) Grossman's statement will carry particular weight as evidence that at least some claims were infringed. But it will have to bear that weight on the merits, rather than through estoppel, which would preempt debate and preclude the Court's inquiry into what would have happened but for Dickstein's alleged negligence. Indeed, applying judicial estoppel here would convert the doctrine from a protection of the integrity of courts into a sword to be used offensively, one that would be conclusive in many malpractice suits. See Shea v. Clinton, No. 02-577, 2012 WL 3105215, at *5 (D.D.C. July 30, 2012) ("The purpose of judicial estoppel is to protect the integrity of the judicial process. Holding for the plaintiff here would not serve that interest, but would instead give plaintiff a shortcut to the result he desires. Far from being equitable, resolving this case in this fashion would create a manifest injustice." (internal quotation marks and citation omitted)); see also Ryan Operations G.P. v. Santiam-Midwest Lumber Co., 81 F.3d 355, 365 (3d Cir. 1996) ("Judicial estoppel is not a sword to be wielded by

adversaries unless such tactics are necessary to secure substantial equity." (internal quotation marks omitted)).[3]

## II. Motion for Sanctions

Britannica has also filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 37 based on Dickstein Shapiro's purportedly evasive discovery behavior. As a remedy, Britannica seeks "to bar [Dickstein] from disputing [Britannica's] claim construction" as well as other sanctions. Pl.'s Mot. for Sanctions [Docket Entry 48] at 1 (July 31, 2012) ("Pl.'s Sanctions Mot."). As Britannica acknowledged at the motions hearing, this remedy, if granted, would get it to the same place as would prevailing on the judicial estoppel argument.

### a. Factual Background

This discovery dispute arises out of Britannica's attempt to ascertain which claims Grossman meant to identify as unquestionably infringed in his statement accompanying the

---

[3] Even if judicial estoppel did apply to an attorney's previous statements on behalf of the now-opposing party, estopping Dickstein would nonetheless be inappropriate because the other requirements of judicial estoppel are not met in this case. For one, the PTO did not "accept" Grossman's statement, Moses, 606 F.3d at 798 (internal quotation marks omitted), because it simply noted that the infringement statement was included as required rather than that it was correct on its merits. See Ex. 34 (treating these non-adversarially-tested statements as "alleg[ations]" reflecting the declarant's "opinion"). Expedited treatment based on infringement requires that an attorney be able, in good faith, to say that there is actual infringement, not that the PTO find this representation correct. See Manual § 708.02; Ex. 34. Accordingly, the PTO does not appear "misled" when, after litigation, it turns out that no infringement exists in a case where expedited treatment was granted. See Maine, 532 U.S. at 750 ("[C]ourts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled[.]" (internal quotation marks omitted)).
    Moreover, because of changes in the law and the claim's narrowing in the course of the prosecution, as well as the fact that the infringement statement was couched as Grossman's "opinion," Ex. 33; Ex. 36, Dickstein's position is not "clearly inconsistent with its earlier" statement, Moses, 606 F.3d at 798. See also Comcast Corp., 600 F.3d at 647 ("Doubts about inconsistency often should be resolved by assuming there is no disabling inconsistency, so that the second matter may be resolved on the merits." (internal quotation marks omitted)).

11

Petition to Make Special. In the course of conducting discovery limited to judicial estoppel, Britannica submitted two interrogatories that asked Dickstein to "[i]dentify the claims that 'are unquestionably infringed'" as referenced in the Petitions to Make Special. Dickstein Shapiro Interrog. Resps. [Docket Entry 48-2] at 3, 5 (July 3, 2012). Dickstein responded that "it does not at this time know what claims were referred to." Id. Based on these responses, Britannica contends that Dickstein's lawyers failed adequately to respond to the interrogatories.

Britannica subsequently deposed Grossman, who testified that he doesn't recall the specific claims he had in mind at the time he made the statement to the PTO. Grossman Dep. [Docket Entry 48-3] 41:7-12 (July 11, 2012); id. 93:4-7. When asked whether his lawyers asked Grossman "to figure out what claims [he was] referring to" at any prior time, Grossman responded that he "do[es]n't recall specifically looking into that issue." Id. at 42:12-20. Grossman did, however, testify that before the deposition he reviewed the Petitions to Make Special, his correspondence with the Baker Botts lawyers who were involved in petition-related decisions, and the presentation on which he relied in making his statements to the PTO. Id. at 28:20-29:2; id. at 42:19-43:2; id. at 53:4-17. Based on Grossman's deposition testimony, Britannica contends that "this critical witness was not adequately prepared" for the deposition. Pl.'s Sanctions Mot. 6.

In light of Grossman's inability to recall specific claims, Britannica asked Grossman during his deposition to recreate the infringement analysis he undertook in 2005. Dickstein's lawyers objected, arguing that Grossman's current infringement analysis would be irrelevant to judicial estoppel. Dickstein also contended that Grossman lacked the tools he needed to make the analysis because his 2005 efforts were based in significant part on conversations with Baker Botts attorneys, conversations that he could not now recreate. See Grossman Dep. 95:13-96:22.

Britannica argues that Dickstein Shapiro is "stonewall[ing]" by refusing to allow Grossman to reconstruct the analysis. Pl.'s Sanctions Mot. 6.

### b. Dickstein's Conduct Was Proper

Britannica has failed to identify any misconduct. First, Dickstein fully responded to Britannica's interrogatories asking which claims Grossman meant in 2005. Dickstein's attorneys have repeatedly represented, and the record reflects, that they attempted to identify the claims Grossman referred to as unquestionably infringed. The attorneys "reviewed the relevant documents in [Dickstein's] possession relating to the drafting of the Petition to Make Special and interviewed Mr. Grossman and other lawyers who billed time in connection with the preparation and filing of the [two patent] applications." Def.'s Opp'n to Pl.'s Sanctions Mot. [Docket Entry 52] at 7 (Aug. 17, 2012) ("Def.'s Sanctions Opp'n"). This suffices as a "reasonable inquiry" required by Federal Rule of Civil Procedure 26(g)(1). After a reasonable inquiry proved futile, Dickstein's response that it does not know the answer is entirely sufficient.

Second, Britannica's allegation that Grossman was not adequately prepared for his deposition mischaracterizes the record. Dickstein's attorneys asked Grossman about the claims, and had him review the key documents. See Def.'s Sanctions Opp'n 7; Grossman Dep. 28:20-29:2; id. at 42:19-43:2; id. at 53:4-17. Although Grossman stated that he did not recall being asked specifically which claims he had been referring to, that inability to recall his lawyers' question is not, as Britannica seeks to imply, evidence that the question was never asked. The attorneys' representations that they asked Grossman which claims he had had in mind are credible and consistent with Grossman's other responses, see, e.g., id. at 92:22-93:7 (Grossman stating that he "went over the Petition to Make Special and what happened" with his attorneys but he "didn't remember specific claims"). Moreover, Britannica asked the very question at

issue—which claims Grossman meant in 2005—at Grossman's deposition. Grossman had the opportunity to answer and responded, consistently with Dickstein's interrogatory response, that he did not recall.

Third, Britannica contends that, in light of Grossman's failure to recall specific claims, Dickstein's lawyers should have allowed Grossman to perform anew his infringement analysis. Dickstein correctly responds that Grossman's current analysis of what claims were infringed is irrelevant to the judicial estoppel issue (the sole issue within the scope of discovery under the Court's May 30, 2012 Order). Britannica never argued that asking Grossman to replay the analysis would refresh his recollection of <u>what he meant in 2005</u>. And indeed Dickstein's lawyers specifically explained that they would allow Britannica's lawyers "to show [Grossman] documents and ask, you know, whether they refresh his recollection about what claims were referred to in the Petition to Make Special." Grossman Dep. 83:9-18.[4]

This, in turn, reveals a deeper problem with Britannica's motion. If it believed it was entitled to have Grossman conduct a new infringement analysis, i.e., to provide a further response at the deposition, or to have Dickstein more fully respond to the interrogatory, Britannica should have styled this request as a motion for an order compelling a further response, <u>see</u> Fed. R. Civ. P. 37(a). Yet Britannica never sought a discovery response as a remedy. In a phone call to chambers in which it first raised the issue, Britannica asked only that, given its interrogatory response, Dickstein be prevented from later saying that it identified the claims Grossman had been referring to. And when Britannica filed its motion for sanctions—despite the Court's suggestion that the issue be addressed in the summary judgment context, <u>see</u> July 16,

---

[4] Even if Britannica had argued that performing a new analysis would itself refresh Grossman's recollection, this method of refreshing his recollection would be highly burdensome, yet—given Grossman's emphatic and repeated inability to recall the claims despite reviewing other materials—unlikely to succeed.

14

2012 Order—Britannica sought the entirely different and vastly broader relief of barring Dickstein from contesting Britannica's claim construction. Had Britannica sought merely to have Grossman respond to its request that he replay the infringement analysis, that motion would at least have had a colorable basis in law.[5]

### c. Imposition of Sanctions on Plaintiff's Counsel

As explained above, Britannica has failed to point to a shred of misconduct by Dickstein Shapiro's attorneys. Yet it did more than file a factually unsupported motion. It asked for a remedy entirely unsupported by law and removed from the scope of the purported violations: that Dickstein be prohibited from contesting Britannica's claim construction. Requesting that its claim construction be deemed conceded—where at most its discovery requests would have gotten Grossman to identify claims making its judicial estoppel argument easier on one ultimately irrelevant factor—is baseless. Seeing a perceived (but nonexistent) wrong, Britannica sought a shortcut to its desired outcome without any legal support for such relief. In so doing, Britannica abused this Court's process and wasted the Court's and Dickstein's time with an unjustified motion.

Britannica cited scant authority in its brief motion for sanctions, shifting the research obligation to Dickstein. It freely accuses opposing counsel of misconduct for taking reasonable positions on behalf of their client. Throughout the process, Britannica has fought over minor issues, insisting on filing motions over discovery disputes despite this Court's warnings against

---

[5] Even if the Court were to construe Britannica's much broader Rule 37 motion as now requesting the Court to compel a discovery response, the Court would deny that motion as outside the scope of discovery for the reasons explained above. Moreover, no response by Grossman could change the Court's analysis on judicial estoppel. Judicial estoppel is inapplicable because Grossman was Britannica's lawyer rather than a party at the time he made the statements, regardless of which claims he meant. The request for an order compelling a discovery response would hence be moot.

doing so when unnecessary. And Britannica has repeatedly violated the Court's Local Rules, failing to confer with opposing counsel before filing nondispositive motions as required by Local Rule 7(m). Indeed, Britannica frivolously sought sanctions in the context of litigating this very motion for sanctions. See Pl.'s Mot. to Treat as Conceded [Docket Entry 49] (Aug. 16, 2012). Because it missed the Federal Rule of Civil Procedure provision that adds three days to the time to file an opposition when service is made electronically, see Fed. R. Civ. P. 6(d), Britannica believed that Dickstein's opposition to the motion for sanctions was due on August 14. On August 16, without conferring with Dickstein, but see Local Civ. R. 7(m), Britannica filed a motion to treat the motion for sanctions as conceded. Britannica was simply wrong on the law.[6] Britannica did not catch this error due to its failure to confer with opposing counsel as required, thus forcing Dickstein and the Court to spend time on a legally inaccurate motion.

    The conduct of Britannica's counsel with respect to the motion for sanctions reflects a careless approach to the substantive law and local rule obligations, and a disregard of this Court's warning against filing unnecessary discovery motions. Counsel's motion for sanctions is a troubling attempt to get a second bite at the judicial estoppel apple, barring Dickstein from contesting claim construction in any way possible. Although the Court does not, at this time, find that filing this motion rises to the level of recklessness or bad faith required for the imposition of sanctions, see LaPrade v. Kidder Peabody & Co., Inc., 146 F.3d 899, 905 (D.C. Cir. 1998) ("This court has not yet established whether the standard for imposition of sanctions under 28 U.S.C. § 1927 should be 'recklessness' or the more stringent 'bad faith.'"), Britannica and its counsel are advised to consider carefully the merits of future discovery motions.

---

[6] Moreover, seeking the drastic sanction of deeming the motion conceded for a two-day delay without any showing of prejudice was itself questionable.

On the other hand, the decision of Britannica's counsel to file, without conferring with opposing counsel, the frivolous motion to treat the motion for sanctions as conceded does amount to bad faith that unreasonably and vexatiously multiplied these proceedings. Accordingly, Britannica's counsel shall pay the attorney fees Dickstein incurred responding to that motion. See 28 U.S.C. § 1927 ("Any attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."). Britannica and its counsel shall hereafter comply with Local Rule 7(m) or the Court will assess further sanctions, including, if appropriate, disregarding motions filed in violation of that Rule.

## CONCLUSION

For these reasons, Britannica's motions for partial summary judgment as to judicial estoppel and for sanctions will be denied. Dickstein's motion for partial summary judgment will be granted. Finally, Britannica's counsel shall be required to pay the costs and attorney's fees Dickstein expended in opposing the motion to treat the motion for sanctions as conceded. A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Dated: November 26, 2012